IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Standard Fire Insurance Company, | ) | C/A No. 4:08-cv-2817-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Daniel Shine; Mary Shine; George Jacob | ) | |
| Shine; Dorothy Merritt as Personal | ) | |
| Representative of the Estate of Jonah Merritt; | ) | |
| Kenny Campbell; Neal Campbell; and Kent | ) | |
| Lane, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are cross-motions for summary judgment. Standard Fire Insurance Company ("Plaintiff") instituted this declaratory judgment action pursuant to the *Federal Declaratory Judgment Act,* 28 U.S.C. § 2201 *et seq.,* by Summons and Complaint filed August 8, 2008. The Plaintiff seeks a declaration of its rights and responsibilities, if any, pursuant to uninsured motorist ("UM") coverage contained in an automobile insurance policy insured and underwritten by the Plaintiff to the defendants Daniel and Mary Shine in relation to a single-car accident occurring on November 5, 2001, involving defendants George Jacob Shine ("Jake Shine"), Kenny Campbell, Neal Campbell, Kent Lane, and Jonah Merritt (deceased).

On July 14, 2009, the defendants Dorothy Merritt as personal representative of the Estate of Jonah Merritt, Kenny Campbell, Neal Campbell, and Kent Lane moved pursuant to Fed. R. Civ. P. 56(b) for an order granting Defendants' Motion for Summary Judgment in favor of the defendants for a declaration that the insurance policy at issue in this case provides UM coverage for the injuries that the defendants sustained in the November 5, 2001, automobile accident.

On July 15, 2009, the Plaintiff moved pursuant to Fed. R. Civ. P. 56(b) for an order granting Plaintiff's Motion for Summary Judgment in favor of the Plaintiff for a declaration that the UM coverage provided in the policy at issue is not applicable to the November 5, 2001, automobile accident; or, alternatively, a declaration that the UM coverage provided in the policy at issue is not applicable to the November 5, 2001, automobile accident in excess of the mandatory minimum limits set forth in South Carolina Code Annotated Section 38-77-140 (2009), as incorporated by Section 38-77-150(A) and as then applicable.  A hearing was held on the motions on January 15, 2010.

## **Procedural History**

The defendants Dorothy Merritt as personal representative of the Estate of Jonah Merritt, Kenny Campbell, Neal Campbell, and Kent Lane instituted personal injury actions against Jake Shine in the Dillon County Court of Common Pleas.  In August 2003, the Plaintiff instituted an action in this Court under the *Federal Declaratory Judgment Act*, 28 U.S.C. § 2201 *et seq.*, seeking a declaration of its rights and responsibilities under the bodily injury *liability* coverage of the policy at issue with regard to the November 5, 2001, accident and resulting liability claims.  This Court granted summary judgment in favor of the Plaintiff, holding that (a) the named driver exclusion endorsement of the policy at issue complies with Section 38-77-340 and that "Ja[ke] Shine was a named, validly excluded driver under the policy," (b) Jake Shine was a non-permissive user of the truck, and (c) even if Jake Shine was a permissive user, liability coverage was still barred by the valid named driver exclusion.  This Court, therefore, declared that the Plaintiff was not obligated to defend or indemnify the Shines for the liability claims arising out of the accident at issue.[1]

---

[1]Finding that the arguments for UM coverage advanced by the defendants in the earlier declaratory action were not ripe for adjudication, this Court dismissed those

Integon General Insurance Corporation similarly instituted a declaratory judgment action in state court seeking to enforce certain exclusions contained in its automobile liability insurance policy issued to Jake Shine. Reversing the state trial court's initial finding that coverage existed under the Integon policy, the South Carolina Supreme Court held that coverage for the November 5, 2001, accident was barred by an exclusion.[2]

The defendants Dorothy Merritt as personal representative of the Estate of Jonah Merritt, Kenny Campbell, Neal Campbell, and Kent Lane thereafter sought to prosecute claims for UM coverage under the policy at issue in this case. The instant declaratory judgment action and cross-motions for summary judgment followed.

### Undisputed Statement of Facts

The automobile insurance policy (No. 946354293 101 1), including all endorsements and amendments thereto, ("Policy") at issue in this case was insured and underwritten by the Plaintiff to defendants Daniel and Mary Shine. In consideration of the Policy, Daniel Shine executed a "Named Driver Exclusion Endorsement" and a form entitled "Operation by Named Person Eliminated–South Carolina" expressly excluding his son, defendant Jake Shine, from coverage[3] under the Policy. Defendants

---

claims without prejudice. See Standard Fire Ins. Co. v. Shine, No. 4:03-2583-27, slip op. (D.S.C. March 31, 2005) (Harwell, J.) (unpublished order granting summary judgment).

[2]See Integon Gen. Ins. Corp. v. Shine, Mem. Op. No. 08-MO-034 (S.C. Aug. 4, 2008) (unpublished memorandum opinion).

[3]The Named Driver Exclusion Endorsement provides, in pertinent part: "[I]t is hereby agreed that with respect to such insurance as is afforded under the coverages appearing on the declarations page, we will not be liable for damages, losses or claims arising out of the operation, occupation or use of the motor vehicle . . . while such motor vehicle is driven by: JACOB SHINE." (emphasis added).

3

Daniel and Jake Shine signed the forms and represented to the Plaintiff that Jake Shine had obtained other automobile insurance. The Policy further excluded from coverage any person "[u]sing a vehicle without a reasonable belief that the person is entitled to do so."

The issue of Jake Shine's liability is uncontested.[4]  This case arises out of a single car accident in a 1995 Chevrolet S-10 (the "truck") owned by Daniel Shine and covered by the Policy.  Specifically, on November 5, 2001, while operating the truck, Jake Shine was involved in a single-motor vehicle accident resulting in bodily injury and death to others.  It is now undisputed that Jake Shine was operating the truck without permission of the owner.  On the day of the wreck, Jake Shine drove the truck from his father's house to pick up his friend Kent Lane.  Jake Shine then drove to Neal Campbell's house where he picked up Neal Campbell, Kenny Campbell, and Jonah Merritt.  After leaving the house where he picked up the passengers, Jake Shine received a telephone call from his mother telling him to return home immediately.  Shortly thereafter, Jake Shine took his eyes off of the road; ran off the road on a curve; over-corrected; and lost control, causing the truck to roll several times before coming to a stop upside down off the road.[5]  Further, the facts are undisputed that the passengers were innocent third parties with no knowledge of the "Named Driver Exclusion Endorsement," the form entitled "Operation by Named Person Eliminated–South Carolina," or that the driver, Jake Shine, did not have permission to drive the truck.

---

[4] See Memorandum in Support of Defendants' Motion for Summary Judgment, p.2 [Docket #36-1].

[5] See Standard Fire Ins. Co. v. Shine, No. 4:03-2583-27, Deposition of George Jacob Shine (Apr. 2, 2003).  The Court may take judicial notice of its own records in another and distinct case if "the prior case is brought into the pleadings in the case on trial or where the two cases represent related litigation." U.S. Fid. & Guar. Co. v. Lawrenson, 334 F.2d 464, 467 (4th Cir. 1964) (quoting Lowe v. McDonald, 221 F.2d 228, 230-31 (9th Cir. 1955)).

It is now settled that there is no liability coverage that applies to this accident. This Court previously ruled that the liability coverage under the Policy does not provide coverage, but reserved any ruling on the applicability of the UM coverage under the Policy until after the pending state court action. The South Carolina Supreme Court has now ruled that the liability coverage from the Integon Policy that Jake Shine had on another vehicle does not provide liability coverage for this accident. Therefore, the issue of whether the UM provisions of the Policy at issue in this case provide coverage for the injuries sustained in the November 5, 2001, automobile accident is now ripe for adjudication.

**Legal Standard for Summary Judgment**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (2009). The movant has the burden of proving that summary judgment is appropriate. Once the movant makes the showing, however, the opposing party must respond to the motion with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Cross-motions for summary judgment are given the same standard of review and "we consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to

each under the Rule 56 standard." *Monumental Paving & Excavating, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir.1999). In this case, each movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries this burden, "[t]he burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

Moreover, "once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp.,* 477 U.S. at 322. Moreover, the nonmoving party's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *De Leon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n.7 (4th Cir. 1989).

### Discussion

In the prior declaratory judgment action, this Court found that the named driver exclusion at issue complies with Section 38-77-340 and is effective to exclude bodily injury liability coverage for claims arising out of Jake Shine's operation of the truck. That finding was not and is not challenged by the defendants. Thus, the primary question presented here is whether that validly executed named driver

exclusion pursuant to Section 38-77-340 also effectively excludes UM coverage for claims arising from Jake Shine's operation of the truck on November 5, 2001.[6]

I:      Section 38-77-340 and UM Coverage

In Plaintiff's Motion for Summary Judgment, the Plaintiff argues that the word "coverage" in Section 38-77-340 applies to all types of insurance coverages, and therefore, a valid named driver exclusion under Section 38-77-340 effectively excludes all coverages under an automobile insurance policy. Accordingly, the Plaintiff argues that the named driver exclusion at issue in this case bars UM coverage under the Policy for any claims arising out of Jake Shine's operation of the truck, and therefore, any injuries sustained by the defendants as a result of the November 5, 2001 automobile accident.

In seeking to interpret a statute, a court must first attempt to ascertain the intent of the legislature. *Hodges v. Rainey,* 533 S.E.2d 578, 581 (S.C. 2000). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *Broadhurst v. City of Myrtle Beach Election Comm'n,* 537 S.E.2d 543, 546 (S.C. 2000). The court must give words their plain and ordinary meaning, without resorting to subtle or forced construction to limit or expand the statute's operation. *Sloan v. S.C. Bd. of Physical Therapy Exam'rs,* 636 S.E.2d 598, 607 (S.C. 2006).

---

[6]It is undisputed that in light of the South Carolina Supreme Court's opinion in <u>Integon Gen. Ins. Corp. v. Shine</u>, and this Court's opinion in the earlier declaratory judgment action, the truck being operated by Jake Shine was an uninsured motor vehicle. <u>See</u> S.C. Code Ann. § 38-77-30(14)(b) (2009) ("'Uninsured motor vehicle' means a motor vehicle as to which . . . there is nominally [bodily injury liability insurance and property damage insurance], but the insurer writing the same successfully denies coverage thereunder."); <u>see also</u> <u>Auto Owners Ins. Co. v. Rollison,</u> 663 S.E.2d 484, 487-88 (S.C. 2008) (uninsured vehicle is one to which liability coverage is successfully denied).

According to the South Carolina Supreme Court, Section 38-77-340 was "intended to allow a named insured (Owner) to obtain a lower premium rate if a member of his household has a bad driving record." *Lovette v. U.S. Fid. & Guar. Co.,* 266 S.E.2d 782, 783 (S.C. 1980). As such, Section 38-77-340 was enacted "to provide a means in hardship cases of excluding certain persons from the omnibus clause," which itself was enacted to "expand the coverage of automobile liability policies." *S.C. Ins. Co. v. Barlow,* 392 S.E.2d 795, 798 (S.C. Ct. App. 1990) (discussing former Section 56-11-250). This Court finds that while Section 38-77-340 prescribes the requirements an insurance carrier must follow to exclude liability coverage for certain named drivers, the exclusion authorized by that statute is *only* for liability coverage, not UM coverage. This is clear from the plain and ordinary meaning of the text composing Section 38-77-340, which fails to mention UM coverage:

> Title 38. Insurance
>  Chapter 77. Automobile Insurance
>   Article 3. Mandate to Write and Insurance Coverage
>    **§ 38-77-340. Agreement to exclude designated natural person from coverage.**
>
> Notwithstanding the definition of "insured" in Section 38-77-30, the insurer and any named insured must, by the terms of a written amendatory endorsement, the form of which has been approved by the director or his designee, agree that coverage under such a **policy of liability insurance** shall not apply while the motor vehicle is being operated by a natural person designated by name. The agreement, when signed by the named insured, is binding upon every insured to whom the policy applies and any substitution or renewal of it.

S.C. Code Ann. § 38-77-340 (emphasis added).

In the case at bar, the Plaintiff attempts to broaden the scope of Section 38-77-340 to include UM coverage in contradiction to the plain language of the statute. The Plaintiff attempts to conflate the phrase "policy of liability insurance" with UM coverage. However, the term "policy" is a defined term under South Carolina law:

8

> "[P]olicy" means a policy or contract for bodily injury or property damage **liability coverage** issued or delivered in this State covering **liability**, arising from the ownership, maintenance, or use of any motor vehicle, insuring as the named insured one individual or husband and wife who are residents of the same household . . .

S.C. Code Ann. § 38-77-30(10.5) (emphasis added). Notably, there is no reference to UM coverage anywhere in that definition. As the Plaintiff points out, the definition of "Automobile Insurance," which is found in Section 38-77-30(1) and serves as the Title for Chapter 77, does include UM coverage. However, the term "Automobile Insurance" was not the term used by the legislature in the specific statute providing for named driver exclusions. *See* S.C. Code Ann. § 38-77-340 (While the Title of Chapter 77 is "Automobile Insurance," the more narrowly defined section -340 appears, from the plain language "policy of liability insurance," to deal solely with liability coverage.).

The Motor Vehicle Financial Responsibility Act and the Automobile Reparation Reform Act of 1974 was enacted "to afford greater protection to those injured through the negligent operation of automobiles in this State." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Parker*, 320 S.E.2d 458, 461 (S.C. Ct. App. 1984). In 1973, just one year before the Act's enactment, the South Carolina Supreme Court drew a clear distinction between *liability* coverage and *UM* coverage in reaching its holding in *Hogan v. Home Ins. Co.,* 194 S.E.2d 890, 892 (S.C. 1973). Thus, the legislature was presumably aware of this clear distinction when making its decision as to what defined term to use in Section 38-77-340 and, as a result, the types of coverage that would be affected by the named driver exclusion under that Section. Accordingly, the legislature used the phrase "policy of liability insurance," which does not include UM coverage, instead of the defined term "Automobile Insurance," which does include UM coverage. Thus,

this Court finds that the requirements prescribed in Section 38-77-340 regarding named driver exclusions and liability coverage have no effect on UM coverage.[7]

## II: Public Policy and Statutory Minimum Limits of UM coverage

Even if Section 38-77-340 could be read to affect UM coverage by its terms, application of the named driver exclusion statute to UM coverage is contrary to public policy. The public policy of the State of South Carolina is found in the legislatively established provisions of financial responsibility laws. *USAA v. Markosky,* 530 S.E.2d 660, 664 (S.C. Ct. App. 2000) ("To the extent the legislature determines this public policy is not being effected, it has the option of raising the minimum limits."). "Reasonable exclusionary clauses which do not conflict with the legislative expression of the public policy of the State as revealed in the various motor vehicle insurance statutes are permitted." *Parker*, 320 S.E.2d at 461. To the extent insurance policy language conflicts with the UM statutes, the UM statutes prevail because the statutes requiring UM coverage are part of an insurance contract as a matter of law. *See Jordan v. Aetna Cas. & Sur. Co.,* 214 S.E.2d 818, 820 (S.C. 1975).

---

[7]Arizona, Florida, and Mississippi have similarly refused to enforce the exclusion against UM coverage, deeming it a violation of public policy and contrary to the *full coverage* requirements of their states' UM coverage statutes. See Employers Mut. Cas. Co. v. McKeon, 159 Ariz. 111, 765 P.2d 513 (1988) ("Our statutes require an insurer to provide full uninsured motorist coverage to every insured. . . . [C]ourts in jurisdictions which, like Arizona, have adopted *mandatory* uninsured coverage, have not upheld a named driver exclusion as a partial rejection of uninsured motorist benefits."); Butts v. State Farm Mut. Auto. Ins. Co., 207 So. 2d 73 (Fla. Dist. Ct. App. 3d Dist. 1968); Atlanta Cas. Co. v. Payne, 603 So. 2d 343 (Miss. 1992). Delaware and Nebraska have held that a named driver exclusion is enforceable with respect to liability coverage, but is void as against public policy as it applies to the exclusion of uninsured motorist/underinsured motorist coverage for the named-excluded driver. See State Farm Mut. Auto. Ins. Co. v. Washington, 641 A.2d 449 (Del. 1994); Hood v. AAA Motor Club Ins. Ass'n, 259 Neb. 63, 607 N.W.2d 814 (2000).

As a matter of public policy and law, all automobile insurance policies in South Carolina are statutorily required to contain UM coverage:

> No automobile insurance policy or contract may be issued or delivered unless it contains a provision by endorsement or otherwise . . . undertaking to pay the insured all sums which he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which may be no less than the requirements of Section 38-77-140.

S.C. Code Ann. § 38-77-150; *see Nationwide Mut. Ins. Co. v. Erwood,* 644 S.E.2d 62, 63 (S.C. 2007). "The public policy declared by our [UM] statute imposes an obligation on insurers to provide protection to their insureds against loss caused by wrongful conduct of an uninsured motorist, and any limiting language in an insurance contract which [has] the effect of providing less protection than made obligatory by the statutes is contrary to public policy and is of no force and effect." *Ferguson v. State Farm Mut. Auto. Ins. Co.,* 198 S.E.2d 522, 524 (S.C. 1973). Thus, the exclusion of UM coverage by an insurance carrier pursuant to Section 38-77-340 would be contrary to the public policy of South Carolina as set forth by the legislature.

During the motions hearing, the Plaintiff argued that if this Court agreed with its interpretation of Section 38-77-340, specifically that the statute prescribes the requirements for completely excluding all types of coverage under a policy of automobile insurance, then the defendants would not even be entitled to the statutory minimum limits of UM coverage. In support of this argument, the Plaintiff points to the fact that a valid named driver exclusion under Section 38-77-340 is effective in completely excluding *liability* coverage despite the fact that Section 38-77-140 prescribes minimum limits for liability coverage in all automobile insurance policies. However, South Carolina law draws a clear distinction between the respective purposes of liability coverage and UM coverage. The South Carolina Supreme Court has explained the distinction as follows:

Willis clearly points to the distinction between Liability and Uninsured motorist coverage. The liability contract is only required to insure "the persons defined as insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of" the motor vehicle described in the policy; while uninsured motorist coverage **obligates** the insurer to pay **all sums** which the insured "shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle."

*Hogan*, 194 S.E.2d at 892 (emphasis added). Further, the South Carolina Supreme Court has noted that the UM statute "is remedial in nature, enacted for the benefit of injured persons, and is to be liberally construed so that the purpose intended may be accomplished." *Gunnels v. Am. Liberty Ins. Co.*, 161 S.E.2d 822, 824 (S.C. 1968).

In sum, liability coverage protects an insured from his own negligence, while UM coverage protects innocent insureds from the negligence of an uninsured motorist. Thus, while certain limitations on *liability* coverage, at least to the extent the coverage exceeds the statutory minimum limits of Section 38-77-140, have been upheld,[8] insurance policy provisions that limit UM coverage have been struck down due to public policy because UM coverage is mandatory in South Carolina. *See Erwood,* 644 S.E.2d at 63 ("Section 38-77-150 mandates UM coverage in all automobile insurance policies . . . . We find that the mandatory nature of this coverage . . . and that public policy requires that basic UM coverage be afforded to Erwood."); *see also Hogan,* 194 S.E.2d at 892 (holding an insurance policy provision excluding UM coverage as void pursuant to statutory requirements). Thus, South Carolina law requires statutory minimum limits of UM coverage in all automobile insurance policies.

---

[8]See USAA v. Markosky, 530 S.E.2d 660, 663-64 (S.C. Ct. App. 2000) (invalidating notice provision for liability coverage only to extent of mandatory minimum limits); Hansen v. USAA, 565 S.E.2d 114, 118-19 (S.C. Ct. App. 2002) (exclusion of liability coverage void only to extent it excludes mandatory minimum limits).

**III:**      Optional UM Coverage in Excess of the Statutory Minimum Limits is a Matter of Contract

South Carolina law requires that an insurance carrier offer UM coverage to the insured up to the liability limits of the policy "in addition to the mandatory coverage prescribed by Section 38-77-150." S.C. Code Ann. § 38-77-160. By statute, therefore, the policy limits for UM coverage are either the statutory minimum limits at the time the policy is issued, or an amount up to the liability limits, whichever the insured elects to purchase. The fact that UM coverage is subject to this mandatory offering requirement demonstrates the legislative intent that purchasers of automobile insurance policies be able to buy UM protection in the same limit as the liability coverage they chose.

The defendants argue that Section 38-77-340 only permits exclusion of *liability* coverage and, because there is not a similar statute prescribing requirements to exclude UM coverage, then the amount of UM coverage under a policy cannot be limited or excluded, even by a validly executed endorsement. According to the defendants, insurance carriers are only *authorized* to exclude a particular type of coverage if there is a statute allowing such an exclusion. The defendants base this argument on their interpretation of Section 38-77-10.[9] This Court disagrees and finds no support in Section 38-77-10 for this proposition. In fact, South Carolina law dictates the exact opposite is true, as an insurer and the insured may contract to restrict liabilities to injuries inflicted while the automobile is being driven by a certain person, as long as any limiting language does not contradict public policy or an applicable statute. *See, e.g., Barlow,* 392 S.E.2d at 797-98 ("[T]he thrust of Section [38-77-340] is to protect, in limited situations, the right of the parties to make their own contract.").

---

[9]"In order to effect a complete reform of automobile insurance and insurance practices in South Carolina, the purposes of this chapter are to provide: (1) that every automobile insurance risk which is insurable on the basis of the criteria established in this chapter is entitled to automobile insurance . . . ." S.C. Code Ann. § 38-77-10.

An insurance policy, including all the endorsements thereto, is a contract subject to the general rules of contract construction. *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.,* 392 S.E.2d 460, 461 (S.C. 1990); *see Estate of Revis v. Revis,* 484 S.E.2d 112, 116 (S.C. Ct. App. 1997). "The purpose of all rules of construction is to ascertain the intention of the parties to the contract." *Bruce v. Blalock,* 127 S.E.2d 439, 442 (S.C. 1962). "[I]nsurers have the right to limit their liability and to impose whatever conditions they desire upon an insured, provided they are not in contravention of some statutory inhibition or public policy." *Parker*, 320 S.E.2d at 461. As such, "[r]easonable exclusionary clauses which do not conflict with the legislative expression of the public policy of the State as revealed in the various motor vehicle insurance statutes are permitted." *Id.*

In the instant matter, any UM coverage in excess of the statutory minimum limits, or basic coverage, is "a matter of contract between the insurer and the insured." *Hansen v. USAA,* 565 S.E.2d 114, 118 (S.C. Ct. App. 2002). The Plaintiff and the Shines entered into an insurance contract with the intention that the Policy would provide UM coverage in the amount of $250,000/$500,000, and the Shines paid premiums for this amount of UM coverage. However, as part of the same insurance contract, Daniel and Jake Shine executed a "Named Driver Exclusion Endorsement," which provides the following:

> In consideration of our continuation of this policy in force, at the rate applicable because of this endorsement, it is hereby agreed that with respect to such insurance as is afforded under the coverages appearing on the declarations page, we will not be liable for damages, losses or claims arising out of the operation, occupation or use of the motor vehicle . . . while such motor vehicle is driven by: JACOB SHINE.

As such, the Plaintiff and the Shines presumably attempted to contractually exclude *all* coverages appearing on the declarations page, including UM coverage, anytime the truck was driven by Jake Shine. Nonetheless, this contractual provision is contrary to public policy and the requirements of Section 38-77-150 in that it attempts to completely exclude UM coverage.

If a provision excluding coverage under an insurance contract conflicts with the requirements of an automobile insurance statute, namely a statutory mandate that UM coverage be included in all insurance policies, the statute controls and the exclusion is invalid. *See Hogan,* 194 S.E.2d at 892. While insurance policies are subject to the normal rules governing contracts, including the parties' right to agree to such terms as they deem appropriate,[10] the freedom to contract "is not absolute and coverage required by law may not be omitted." *Jordan v. Aetna Cas. & Sur. Co.,* 214 S.E.2d 818, 820 (S.C. 1975). "Where a statute requires insurance for the benefit of the public . . . the insurer is not permitted to nullify its purposes through engrafting exceptions from liability as to uses which it was the evident purpose of the statute to cover." *Parker,* 320 S.E.2d at 461. In fact, the South Carolina Supreme Court has consistently struck down policy provisions that have the effect of limiting the coverage requirements of the automobile insurance statutes. *See Hogan,* 194 S.E.2d at 892; *Ferguson,* 198 S.E.2d at 525; *Benson v. Nationwide Mut. Ins. Co.,* 238 S.E.2d 683, 684 (S.C. 1977); *cf. Nationwide Mut. Ins. Co. v. Smith,* 654 S.E.2d 837, 841 (S.C. Ct. App. 2007) ("It is undeniable that under a valid insurance policy [the insurance carrier] could not exclude [UM] coverage."). Thus, a named driver exclusion endorsement is void to the extent it seeks to exclude UM coverage in direct contradiction to Section 38-77-150's mandate requiring minimum limits in all automobile insurance policies.

In the case at bar, the Plaintiff essentially asserts that the Policy is void as it relates to the passengers in this accident because the Plaintiff and the Shines had executed a valid named driver exclusion in the name of Jake Shine, who was driving the truck at the time of the accident. However, in making this assertion, the Plaintiff ignores the legislative purpose behind UM coverage. *See Ferguson,* 198 S.E.2d at

---

[10]*See, e.g.,* B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327 (S.C. 1999).

524 (The purpose of UM coverage is to "provide benefits and protection against the peril of injury or death by an uninsured motorist to an insured motorist, his family, and the permissive users of his vehicle."); *see also Gunnels,* 161 S.E.2d at 824 (The UM statute "is remedial in nature, enacted for the benefit of injured persons, and is to be liberally construed so that the purpose intended may be accomplished."). Additionally, the Plaintiff confuses insurance "policy" with insurance "coverage." A valid named driver exclusion does not equate to an invalidation of the **policy**, it merely treats the named individual as a non-permissive user and excludes the vehicle from **liability coverage**. Thus, the vehicle becomes "uninsured."

The South Carolina Supreme Court addressed a similar argument and facts nearly identical to the facts in the instant matter in *Unisun Ins. Co. v. Schmidt,* 529 S.E.2d 280 (S.C. 2000). In *Schmidt*, a passenger in a vehicle asserted she was covered under the owner's UM coverage after the insurance carrier successfully denied liability coverage due to the fact that the driver of the vehicle was a non-permissive user. The court held that the passenger "fell within the definition of 'insured' under the [UM] statute and the **insurance policy** given the BMW was a vehicle 'to which the policy applied.'" *Auto Owners Ins. Co. v. Rollison,* 663 S.E.2d 484, 488 (S.C. 2008) (citing *Schmidt,* 529 S.E.2d at 282). The court clearly explained: "We do not believe . . . the legislature intended an otherwise insured passenger to lose coverage when an unauthorized driver takes the wheel." *Schmidt,* 529 S.E.2d at 283. Accordingly, the court found that the insurance policy was valid, providing the passenger with UM benefits, despite the fact that the driver was a non-permissive user and liability coverage was barred.

The court's decision in *Schmidt* is crucial to the instant matter. In the instant matter, several passengers were injured by a non-permissive uninsured motorist (Jake Shine). When the Plaintiff successfully denied liability coverage, the truck became "uninsured." Had Jake Shine been a permissive

user of the truck on the day of the accident and the truck been "insured," there is little question that the defendants would be entitled to liability coverage up to the liability policy limit of $250,000/$500,000. It is important to note that Daniel Shine also purchased UM coverage in the amount of $250,000/$500,000. Following the South Carolina Supreme Court, this Court believes that these otherwise insured passengers should not lose coverage through a reduction of the available UM coverage from $250,000/$500,000 to $15,000/$30,000 simply because an unauthorized driver (not subject to a named driver exclusion) was behind the wheel. In fact, based on this Court's interpretation of *Schmidt,* this Court believes that the otherwise insured passengers would be entitled to the UM policy limit of $250,000/500,000 had any other unauthorized driver besides Jake Shine been behind the wheel and caused the accident (i.e. a carjacker).[11] In such a situation, the "Named Driver Exclusion Endorsement" would be irrelevant, as the accident would have nothing to do with the insurance provider's enhanced *liability* exposure arising from Jake Shine's negligence in the operation of the truck; however, such is not the case here. Further, such a finding would be consistent with the legislative intent and purpose behind UM coverage. *See Gunnels*, 161 S.E.2d at 824 (The UM statute "is remedial in nature, enacted for the benefit of injured persons, and is to be liberally construed so that the purpose intended may be accomplished." ); *see also Hogan*, 194 S.E.2d at 892 (UM coverage "obligates the insurer to pay all sums which the insured 'shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle.'"); *Ferguson,* 198 S.E.2d at 525 ("The

---

[11]The South Carolina Supreme Court used a hypothetical carjacking to support requiring UM coverage in <u>Schmidt.</u> The court stated that permitting insureds to recover UM benefits in single-car accidents is necessary because there could be a situation in which a person who is *otherwise insured* is the victim of a carjacking. <u>Unisun Ins. Co. v. Schmidt</u>, 529 S.E.2d 280, 283 (S.C. 2000). Allowing an insured to receive UM benefits in that situation is supported by the legislative purpose of UM coverage: to protect innocent insureds from the acts of negligent uninsured motorists. In such a situation, the named insured has a clear interest in protecting the vehicle's occupants.

general rule is that an insurer may not limit its liability under [UM] coverage by setoffs or limitations . . . because the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance."); *Antley v. Nobel Ins. Co.,* 567 S.E.2d 872, 877 (S.C. Ct. App. 2002) ("UM benefits substitute for those benefits [the insured] would have received from the motorist who caused his injuries, if known.")

**However,** this case is clearly distinguishable from *Schmidt* in that Jake Shine was an unauthorized driver <u>because the parties contractually agreed to such through a "Named Driver Exclusion Endorsement."</u> The Plaintiff and the Shines attempted to contractually exclude all coverages when Jake Shine was driving the truck. Nonetheless, Section 38-77-150 requires that all automobile insurance policies provide UM coverage, "within limits which may be no less than the requirements of Section 38-77-140." S.C. Code Ann. § 38-77-150. Further, "any limiting language in an insurance contract which [has] the effect of providing less protection than made obligatory by the statutes is contrary to public policy and is of no force and effect." *Ferguson,* 198 S.E.2d at 524. Thus, this Court finds that the insurance policy at issue in this case provides UM coverage for the injuries that the defendants sustained in the November 5, 2001, automobile accident. Moreover, this Court finds that UM coverage under the Policy is limited to $15,000/$30,000, the statutory minimum limits at the time of the Policy's issuance, as incorporated by Section 38-77-150.[12]

Under the specific facts here, this is the appropriate conclusion to balance the parties' limited right to contract freely for insurance coverage with South Carolina's public policy of protecting innocent insureds through UM coverage. The Plaintiff and the Shines entered into a contract to limit the Plaintiff's

---

[12]In 2006, the minimum limits were increased to $25,000/$50,000 for all policies issued or renewed on or after January 1, 2007. <u>See</u> S.C. Code Ann. § 38-77-140.

exposure by attempting to exclude all coverages under the Policy when Jake Shine was driving the truck. Daniel Shine presumably paid a lower premium as a direct result of lowering the Plaintiff's risk as it relates to Jake Shine's experience, driving record, and negligence. Nonetheless, South Carolina public policy mandates that all automobile insurance policies contain UM coverage in an amount not less than the statutory minimum limits prescribed in Section 38-77-140. Where, as here, the individual who was the subject of a named driver exclusion endorsement **was** driving the truck, and was the sole **"cause"** of the accident, the innocent insureds are entitled to UM coverage in the amount of the statutory minimum limits; however, the insurance carrier should not be liable for more than that amount because the parties contractually agreed to limit the carrier's risk for any liability resulting from the named excluded driver's negligent operation of the truck.[13]

IV: Were the Injured Defendants "Insureds"?

In the Defendants' Motion for Summary Judgment, the defendants seek an order granting summary judgment in favor of the defendants for a declaration that the Policy provides UM coverage for the injuries that defendants Dorothy Merritt as personal representative of the Estate of Jonah Merritt, Kenny Campbell, Neal Campbell, and Kent Lane received in the automobile accident on November 5, 2001. Because this Court finds that an insurance carrier cannot completely exclude or limit UM coverage below the minimum limits prescribed in Section 38-77-140, as incorporated by Section 38-77-150, this Court must now determine whether the relevant defendants were "insureds" under the Policy pursuant to Section 38-77-30(7) solely for UM coverage purposes.

Section 38-77-30(7) defines "insured" to mean:

---

[13] A different result might be reached where the named excluded driver is not responsible for the injury. *See* Hood v. AAA Motor Club Ins. Ass'n, 259 Neb. 63, 607 N.W.2d 814 (2000).

> the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies ***and a guest*** in the motor vehicle to which the policy applies or the personal representative of any of the above.

(Emphasis added). A review of the plain language of the statute reveals that a "guest" is listed independently as a person who constitutes an "insured." Moreover, in interpreting the statute, the South Carolina Supreme Court has found that "a person in the fourth category of 'insured' need only have the status of a 'guest' to qualify as an 'insured.'" *Auto Owners Ins. Co. v. Rollison,* 663 S.E.2d 484, 489 (S.C. 2008). Further, the Court explained:

> In comparison, for a person to constitute an "insured" under the third category, he or she must use the vehicle and have the express or implied consent of the named insured . . . . (Citations omitted). Because the Legislature did not include the consent language when it listed "guest" in the statute, we do not believe it intended to require a "guest" to obtain the consent of the named insured in order to be eligible for uninsured motorist coverage.

*Id.*; *see Owens v. Gresham*, 186 S.E.2d 816, 818 (S.C. 1972) ("A person riding in a motor vehicle is a guest if his transportation confers a benefit only upon himself and no benefit upon the owner or operator except such as is incident to hospitality, social relations, companionship, or the like as a mere gratuity.")

As such, the South Carolina Supreme Court held that "one who is a 'guest' at the invitation of the driver has, by implication, the consent of the named insured . . . unless [the guest] has knowledge to the contrary." *Rollison,* 663 S.E.2d at 489. Because a passenger can only rely on the driver's representations regarding his status as a permissive user, a determination of whether the passenger is a "guest" must be determined from the passenger's perspective. *Id.* at 489-90.

Turning to the facts of the present case, this Court concludes that Kenny Campbell, Neal Campbell, Kent Lane, and Jonah Merritt were guests in the truck. The facts are undisputed that the defendants were

innocent third parties with no knowledge of the "Named Driver Exclusion Endorsement," the form entitled "Operation by Named Person Eliminated–South Carolina," or that the driver, Jake Shine, did not have permission to drive the truck. On November 5, 2001, Jake Shine drove the truck from his father's house to pick up his friend Kent Lane. Jake Shine invited Kent Lane to ride to another friend's home. As such, Jake Shine and Kent Lane went to Neal Campbell's house where Jake Shine then invited Neal Campbell, Kenny Campbell, and Jonah Merritt to ride in the truck. Based on Jake Shine's invitations, Kent Lane, Neal Campbell, Kenny Campbell, and Jonah Merritt, by implication, had the consent of Daniel Shine, the named insured and owner of the truck. Furthermore, there is no evidence that the passengers had reason to know that Jake Shine was not a permissive user of the truck. Thus, Kent Lane, Neal Campbell, Kenny Campbell, and Jonah Merritt were "guests" in the truck for purposes of Section 38-77-30(7).

Since the defendants were guests in the truck, this Court concludes that they were insureds pursuant to Section 38-77-30(7) and the authority of *Rollison*. As such, this Court finds that the defendants Dorothy Merritt as personal representative of the Estate of Jonah Merritt, Kenny Campbell, Neal Campbell, and Kent Lane are entitled to UM coverage in the amount of $15,000/$30,000 for their injuries stemming from the automobile accident on November 5, 2001.

## **Conclusion**

For the foregoing reasons, this Court **GRANTS** in part, and **DENIES** in part, the Defendants' Motion for Summary Judgment and finds, as a matter of law, that the defendants are entitled to UM coverage under the Policy for their injuries related to the automobile accident that occurred on November 5, 2001.  However, this Court finds that the UM coverage is not applicable in excess of the mandatory minimum limits as then applicable.  Accordingly, this Court **GRANTS** in part, and **DENIES** in part,  the Plaintiff's Motion for Summary Judgment.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

March 30, 2010
Florence, South Carolina